[Cite as *State v. Bond*, 2020-Ohio-398.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019 CA 0033 |
| KHAIRI A. BOND | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Richland County Court of Common Pleas, Case No. 2018CR0366

JUDGMENT:      Reversed and Remanded

DATE OF JUDGMENT ENTRY:      February 6, 2020

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

GARY BISHOP
Prosecuting Attorney
BY: JOSEPH SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, OH 44902

CHARES KOENIG
Koenig & Owens, LLC
5354 North High Street
Columbus, OH 43214

*Gwin, P.J.*

{¶1}    Defendant-appellant Khairi A. Bond ["Bond"] appeals his conviction and sentence after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

{¶2}    The underlying case arose as a result of the shooting death of Nolan Lovett on May 3, 2018[1].

{¶3}    On June 25, 2018, an indictment was filed charging Bond in a two-count indictment.  Count One charged Bond with Murder, an unclassified felony under R.C. 2903.02(A).  Count Two charged Bond with Murder, an unclassified felony under R.C. 2903.02(B).  Both Counts included a firearm specification under R.C. 2941.145.

{¶4}    Bond's case proceeded to trial on March 18, 2019 and ending on March 25, 2019.  On March 20, 2019, there was an incident outside of the courtroom during a recess. 1T. at 265[2].  As a result, the Trial Court restricted courtroom access to immediate family members.  1T. at 266-267.  At the close of trial, Bond was found guilty of the felonious assault murder of Nolan Lovett, in violation of R.C. 2903.02(B), an unclassified felony, and of a firearm specification, in violation of RC, 2941.145.  Bond was acquitted of felony murder.  Bond was sentenced to 15 years to life on the murder conviction and 3 years on the firearm conviction, to be served consecutively.

*Assignments of Error*

{¶5}    Bond raises four Assignments of Error,

---

[1] A detailed statement of the underlying facts is not necessary to our disposition of this appeal.
[2] For clarity, references to the transcript from Bond's jury trial will be cited by, as "__T.__," signifying the volume number and the page number.

{¶6} "I. THE TRIAL COURT DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHTS TO A PUBLIC TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, WHEN IT CLOSED HIS TRIAL TO THE PUBLIC.

{¶7} "II. THE VERDICT OF THE JURY FINDING THE DEFENDANT GUILTY OF FELONY MURDER IN VIOLATION OF R.C. 2903.02(B) WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} "III. THE TRIAL COURT IMPROPERLY ALLOWED IRRELEVANT AND OTHER ACTS EVIDENCE, AND PERMITTED THE STATE TO ENGAGE IN PROSECUTORIAL MISCONDUCT, BY ADMITTING A "GANGSTA" RAP SONG, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS.

{¶9} "IV. APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, AS A CONSEQUENCE OF INEFFECTIVE ASSISTANCE OF COUNSEL."

I.

{¶10} In Bond's First Assignment of Error, Bond contends the trial court committed reversible error when it closed the trial to the public. We agree.

**STANDARD OF APPELLATE REVIEW.**

{¶11} The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Section 10, Article I, Ohio Constitution also guarantees an accused the right to a public trial.

{¶12} Because of the constitutional significance of an accused's right to a public trial, "[t]he violation of the right to a public trial is considered structural error and not subject to harmless-error standard." *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 50, *citing Waller v. Georgia*, 467 U.S. 39, 49–50, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), fn. 9. " 'A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." ' " *Sowell*, ¶ 33, *quoting Drummond,* ¶ 50, *quoting Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Because the denial of a defendant's right to a public trial under Article I, Section 10 of the Ohio Constitution is considered structural error, it "cannot be waived by the defendant's silence." *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 81. Consequently, Bond did not waive his right to a public trial in this case by a failure to object at trial. Id. *See also Sowell,* ¶ 36

**ISSUE FOR APPEAL.**

*A. Whether the trial court's order limiting a portion of the public from observing Bond's jury trial introduced error of constitutional dimension.*

{¶13} The right to a public trial is not absolute, and in some instances must yield to other interests, such as those essential to the administration of justice. A trial judge has authority to exercise control over the proceedings and the discretion to impose control

over the proceedings.  Nonetheless, the abridgement of a defendant's right to a public trial may occur only when necessary, and any closure must be narrowly drawn and applied sparingly.  *See State ex rel. The Repository, Div. of Thompson Newspapers, Inc. v. Unger,* 28 Ohio St.3d 418, 421, 504 N.E.2d 37(1986); *State v. Lane,* 60 Ohio St.2d 112, 121, 397 N.E.2d 1338(1979).

{¶14}  In *Waller v. Georgia*, the Supreme Court established the test for determining whether a courtroom closure violates a criminal defendant's Sixth Amendment right to a public trial:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), (quoting *Press–Enter. Co. v. Super. Ct. of Cal., Riverside Cnty.,* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)).  In the same opinion, the Supreme Court articulated the test as a four-factor analysis:

> [ (1) ] the party seeking to close a public hearing must advance an overriding interest that is likely to be prejudiced, [ (2) ] the closure must be no broader than necessary to protect that interest, [ (3) ] the trial court must consider reasonable alternatives to closing the proceeding, and [ (4) ] it must make findings adequate to support the closure.

*Waller,* at 48, 104 S.Ct. 2210, 81 L.Ed.2d 31.  Courts frequently call this the "*Waller* test."

{¶15} The Supreme Court of Ohio in *Drummond* subsequently modified the *Waller* test in cases where the trial closure is partial rather than total. In *Drummond*, the court concluded "[w]hen a trial judge orders a partial, as opposed to a total, closure of a court proceeding, a 'substantial reason' rather than *Waller's* 'overriding interest' will justify the closure." 111 Ohio St.3d 14, 53, 2006-Ohio-5084, 854 N.E.2d 1038.

{¶16} *Waller* dealt with a suppression hearing during which all persons other than witnesses, court personnel, the parties, and their lawyers were excluded for the entire duration. 467 U.S. 39, 42, 104 S.Ct. 2210, 81 L.Ed.2d 31.

{¶17} In the case at bar, the closure was arguably partial. The trial court did not exclude Bond's immediate family members or the victim's immediate family. 1T. at 265-266. There is no evidence that the trial court either permitted or prevented the press from entering the courtroom.

**1). Whether there was a substantial reason for partially closing the courtroom—one that is likely to be prejudiced if no closure occurs.**

{¶18} With regard to the first *Waller* factor, because we consider the closure in this case to be partial, the trial judge needed a "substantial reason" to close the trial to the public. The trial judge articulated the following reason on the record:

THE COURT: The jury is not in the courtroom. They're back in the jury room.

We had an incident in the lobby, apparently, during the break. The jurors were not aware of that. I don't know they weren't aware of it, but they were all in the jury room. This happened out in the lobby. An argument. Apparently, the M&M machine is broken out there. But for that reason, we

have cut back on the number of people that are allowed in the courtroom. We will only allow immediate family members. So that's one of the results. I wanted to get that on the record.

Is there anything the parties want to put on the record about it? Do we need to ask the jury if they heard anything? They were all in the jury room. This happened out in the lobby on a break.

From the State.

MS. BOYER: Your Honor, Olivia Boyer from the State. During the incident, a juror came out of the room. I didn't say anything to her. But she went back into the jury room while the incident was occurring.

THE COURT: The defense?

MR. BRADLEY: No. I don't think we should ask them, because if they didn't know it –

THE COURT: If we ask them, we'll highlight it. I think that's probably smart. Again, we checked immediately to make sure they were all back in the jury room.

MS. SCHUMACHER: My only thought is, Mr. Caudill found himself in the midst of that. I don't know if that will make the paper. I know we've instructed the jurors not to pay attention to the paper. I don't know if it's worth -- if it gets printed, Your Honor, my concern is that they will read it. Is there concern from the jurors one way or the other?

THE COURT: I will continue to address that they are not to read the newspaper or pay attention to the media. Whatever the reporter wants to

report, it's his right.  He can report whatever he wants to.  But the good news is no one got hurt, apparently, and the jurors were not out in the lobby.  All of them were back in the jury room.

MS. SCHUMACHER: Thank you, Judge.

THE COURT: So there are some good things.  Again, we have limited the numbers.  Nothing like that helps the situation, helps either side.  Everyone needs to be on their best behavior or we won't have anybody watching.

MS. SCHUMACHER: One more thing, Judge.  The new victim's rights, there's a constitutional amendment.  I believe the Court has permitted immediate family and father and mother --

THE COURT: Immediate family members we have let back in.  I don't think necessarily anybody in the immediate family was involved.  It was an extended situation.

MS. SCHUMACHER: Thank you, Judge.

THE COURT: We'll bring the jurors back in and get started.

1T. at 264-267.

{¶19}  In *Drummond*, the trial judge explained the reason that he decided to close the courtroom,

The Court: It's come to the attention of the Court that some of the jurors—or witnesses feel threatened by some of the spectators in the court.  The Court's making a decision that until we get through the next couple of witnesses I'm going to clear the courtroom.  That includes the victim's

family, the defendant's family and all other spectators.  The Court had two

incidents yesterday involving one of the spectators where he showed total

disrespect to the Court in chambers and gave the deputies a very hard time.

I didn't hold him in contempt of court, but just after that then another

individual—there was a physical altercation between that individual who

also came to watch the trial.  His name's Damian Williams…

* * *

The Court: Who ultimately got charged with assault on a peace

officer.  So over the objection of the defendant I'm clearing the courtroom

just for today only.

111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶¶32-34.

{¶20}  With respect to the first *Waller* factor, the Ohio Supreme Court in *Drummond*

court concluded,

The trial court's closure order on February 4, 2004, satisfied the

*Waller* criteria.  First, the trial court's interest in maintaining courtroom

security and protecting witness safety supported the trial court's limited

closure of the courtroom.  There had been a physical altercation between a

spectator and courtroom deputies, and a second incident occurred in the

judge's chambers.  The trial court also stated that "the fear of retaliation

expressed by various witnesses" was a basis for its action.  In this regard,

we acknowledge the dangerous nature of gang violence and the genuine

need to protect witnesses testifying against gang members from the deadly

threat of retaliation.

111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶54 (citations omitted).

{¶21} In the case at bar, there is nothing in the record to suggest that any further altercations took place either in the courtroom or in the hallway. The trial judge characterized the incident as "an argument." No further description was given other than a broken candy machine. We are not able to discern from the record who was involved in the incident, the number of individuals involved in the incident, the individual, or individual's relationships to the parties or the witnesses, or the nature of the disagreement. The record does not show that any potential witness was in fear of retaliation or in need of protection. The trial court made no such finding on the record. *See, Drummond,* ¶32; ¶54; *State v. Woods,* 8th Dist. Cuyahoga Nos. 94141, 94142, 2011-Ohio-817, ¶22.

**2). Whether the closure was no broader than necessary to protect the interest in partially closing the courtroom.**

{¶22} With respect to the second *Waller* factor, the *Drummond* court concluded that the closure of the courtroom during the testimony of three state witnesses was not broader than necessary. *Drummond* at ¶ 55. The Court also noted the fact that the media remained in the courtroom "helped safeguard Drummond's right to a public trial" because the witnesses' awareness of the media minimized the risk that they would alter their testimony." 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶55.

{¶23} In the case at bar, the closure was not limited in scope or duration, but continued for the remainder of the trial. Excluding members of the general public who had nothing to do with the incident was overly broad. Nothing in the record suggests that the press was permitted into the courtroom for the remainder of the trial.

**3). Whether the trial court considered reasonable alternatives to closing the proceeding.**

{¶24} With respect to the third *Waller* factor, the *Drummond* court noted, "the record does not show that the trial court considered alternatives to closure. However, the partial closure of the courtroom only during the cross-examination of Rozenblad and the testimony of Morris and Thomas is narrower than full closure for the entire trial. *See Brown,* 142 F.3d at 538." 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶57.

{¶25} In the case at bar, if the trial court believed that the incident on the third day of trial necessitated stronger measures to preserve courtroom safety and security, the record does not disclose that the trial judge considered alternatives to closing the trial to the public. For instance, the record does not show that the trial court considered additional security measures such as posting deputies in the hallway or in the courtroom, or excluding only those individuals who took part in the incident. *See, State v. Long,* 10th Dist. No. 16AP-708, 2017-Ohio-9322, ¶24.

{¶26} Both *Drummond* and *Waller* required the trial court to consider other available options before closing the remainder of the trial. It does not appear from the record before this Court that the trial court did so in the case at bar.

**4). Whether the trial court made findings adequate to support the closure.**

{¶27} Considering the final *Waller* factor the *Drummond* court noted,

[T]he trial court stated that there had been a physical altercation between spectators and courtroom deputies. The trial court also mentioned that another incident had occurred in the judge's chambers and that witnesses had expressed fear of retaliation by testifying in open court. The

trial court also identified Damian Williams and Michael Peace as involved in the earlier disturbances. Although the trial court should have made additional findings to clarify the reasons for closing the court, the strength of the judge's actual findings must be evaluated in reference to the limited scope of the closure. By that standard, we conclude that the trial court's findings were adequate.

111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶58.

{¶28} In the case at bar, with regard to the final *Waller* factor, as noted above, the trial court noted an "argument" and a broken candy machine. The trial court made no other findings in support of its decision, and the record does not disclose any other incidents or circumstances that would have necessitated the closing of the trial to the general public. If there were other relevant incidents or circumstances justifying closure that are not evident from the record, the trial court made no such findings. We cannot agree with the trial court's conclusion that an argument in the hallway during a recess affected the integrity of the proceedings in such a way that closing the trial to the general public became necessary. Otherwise, a trial court could close the courtroom to the public for nearly every minor disturbance. *State v. Woods,* 8th Dist. Cuyahoga Nos. 94141, 94142, 2011-Ohio-817, ¶22.

{¶29} The failure to make any findings on the record to adequately support closure does not satisfy the fourth prong of the *Waller* test. *State v. Long,* 10th Dist. No. 16AP-708, 2017-Ohio-9322, ¶33; *State v. Woods,* 8th Dist. Cuyahoga Nos. 94141, 94142, 2011-Ohio-817, ¶26.

{¶30} We find the trial court's failure to satisfy the *Waller* test and lack of a substantial reason to close the trial to the public as set forth in *Drummond,* violated Bond's Sixth Amendment right to a public trial. *State v. Long,* 10th Dist. Franklin No. 16AP-708, 2017-Ohio-9322, ¶33. Regrettably, we are constrained to reverse this case. As stated above, the violation of the right to a public trial is structural error that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself.

{¶31} Accordingly, the First Assignment of Error is sustained, and we reverse Bond's convictions and remand this case for a new trial.

## II., III., IV.

{¶32} In the remaining assignments of error, Bond alleges various errors at trial. However, based on our disposition of the first assignment of error, we overrule these assignments of error as moot. See App.R. 12(A)(1)(c).

{¶33} Accordingly, judgment of the Richland County Court of Common Pleas is reversed and the case is remanded for a new trial.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur