[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bond*, Slip Opinion No. 2022-Ohio-4150.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4150

THE STATE OF OHIO, APPELLANT, *v.* BOND, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bond*, Slip Opinion No. 2022-Ohio-4150.]

*Structural error—Public-trial violation—Defendant did not object in the trial court to courtroom closure, so a plain-error analysis applies—Defendant failed to establish that the violation rose to the level of a plain error that must be corrected.*

(No. 2020-0415—Submitted March 30, 2021—Decided November 23, 2022.)

APPEAL from the Court of Appeals for Richland County,

No. 2019 CA 0033, 2020-Ohio-398.

_____

O'CONNOR, C.J.

{¶ 1} In this appeal brought by the state of Ohio, we determine whether the trial court violated appellee Khairi A. Bond's right to a public trial under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution and, if so, whether the error must be corrected even though Bond failed

to object to the courtroom closure in the trial court. We hold that a public-trial violation occurred but that Bond has not established that the violation rose to the level of a plain error that we must correct.

**Facts and procedural background**

{¶ 2} Bond was indicted by a Richland County grand jury on two counts of murder, one under R.C. 2903.02(A) and one under R.C. 2903.02(B), each with a firearm specification under R.C. 2941.145. During a recess on the third day of a five-day jury trial, some of the people attending the trial were involved in an altercation outside the courtroom. The altercation resulted in damage to a vending machine. Thereafter, the following interaction between the trial judge and counsel took place outside the presence of the jury.

> THE COURT: The jury is not in the courtroom. They're back in the jury room.
>
> We had an incident in the lobby, apparently, during the break. The jurors were not aware of that. I don't know they weren't aware of it, but they were all in the jury room. This happened out in the lobby. An argument. Apparently, the M&M machine is broken out there. But for that reason, we have cut back on the number of people that are allowed in the courtroom. We will only allow immediate family members. So that's one of the results. I wanted to get that on the record.
>
> Is there anything the parties want to put on the record about it? Do we need to ask the jury if they heard anything? They were all in the jury room. This happened out in the lobby on a break.
>
> From the State.
>
> MS. BOYER: Your Honor, Olivia Boyer from the State. During the incident, a juror came out of the room. I didn't say

anything to her.  But she went back into the jury room while the incident was occurring.

THE COURT: The defense?

MR. BRADLEY: No.  I don't think we should ask them, because if they didn't know it–

THE COURT: If we ask them, we'll highlight it.  I think that's probably smart.  Again, we checked immediately to make sure they were all back in the jury room.

MS. SCHUMACHER [counsel for the state]: My only thought is, Mr. Caudill [a news reporter] found himself in the midst of that.  I don't know if that will make the paper.  I know we've instructed the jurors not to pay attention to the paper.  I don't know if it's worth—if it gets printed, Your Honor, my concern is that they will read it.  Is there concern from the jurors one way or the other?

THE COURT: I will continue to address that they are not to read the newspaper or pay attention to the media.  Whatever the reporter wants to report, it's his right.  He can report whatever he wants to.  But the good news is no one got hurt, apparently, and the jurors were not out in the lobby.  All of them were back in the jury room.

MS. SCHUMACHER: Thank you, Judge.

THE COURT: So there are some good things.  Again, we have limited the numbers.  Nothing like that helps the situation, helps either side.  Everyone needs to be on their best behavior or we won't have anybody watching.

MS. SCHUMACHER: One more thing, Judge.  The new victim's rights, there's a constitutional amendment.  I believe the Court has permitted immediate family and father and mother–

> THE COURT: Immediate family members we have let back in. I don't think necessarily anybody in the immediate family was involved. It was an extended situation.
>
> MS. SCHUMACHER: Thank you, Judge.
>
> THE COURT: We'll bring the jurors back in and get started.

(Capitalization sic.)

{¶ 3} Bond's counsel did not object to the court's limiting attendees to only immediate family members.

{¶ 4} At the conclusion of trial, the jury found Bond guilty of murder as a result of felonious assault in violation of R.C. 2903.02(B) and guilty of an accompanying firearm specification under R.C. 2941.145. Bond was acquitted of murder charged under R.C. 2903.02(A). The trial court sentenced Bond to 15 years to life in prison on the murder conviction and ordered that that sentence be served consecutively to the mandatory three-year sentence for the firearm specification.

{¶ 5} On appeal to the Fifth District Court of Appeals, Bond raised four assignments of error. Relevant here, Bond argued that the trial court violated his right to a public trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when it closed the trial to the public. The Fifth District concluded that Bond's failure to object to the courtroom closure did not result in a waiver of his right to a public trial, because a violation of that right is considered structural error and structural errors " 'cannot be waived by the defendant's silence,' " 2020-Ohio-398, ¶ 12, quoting *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 81. The court of appeals also found that the trial court had failed to provide sufficient justification for the partial closure of the courtroom. It therefore found structural error, reversed Bond's convictions, and remanded the matter to the trial court for a new trial.

{¶ 6} The state appealed, and this court accepted a discretionary appeal to consider the following proposition of law: "The trial court did not violate appellee's Sixth Amendment right to a public trial by partially limiting access to the courtroom after an altercation disrupted court proceedings." *See* 159 Ohio St.3d 1434, 2020-Ohio-3634, 148 N.E.3d 580.

**Analysis**

{¶ 7} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The main distinction between plain-error review, which is the standard employed when a defendant failed to object at trial, and harmless-error review, which is employed when a defendant did object, is the party that bears the burden. *See State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 17-18. Under plain-error review, the defendant bears the burden to demonstrate the requirements for review whereas under harmless-error review, the state bears the burden to demonstrate that the error did not affect the defendant's substantial rights. *Id.* at ¶ 17, 18. Certain constitutional defects that defy analysis by harmless-error standards are structural errors. *Id.* at ¶ 20. " ' "Errors of this type are so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome." ' " *Id.*, quoting *State v. Hill*, 92 Ohio St.3d 191, 196, 749 N.E.2d 274 (2001), quoting *Neder v. United States*, 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Here, both plain error and structural error are relevant because Bond did not object to the courtroom closure in the trial court and the denial of a public trial is a recognized category of structural error, *see id.* at ¶ 21.

{¶ 8} This court recently addressed, but did not resolve, the intersection of plain error and structural error in *State v. West*, __ Ohio St.3d ___, 2022-Ohio-1556, __ N.E.3d___ (plurality opinion). On appeal in *West*, the defendant asserted that the trial-court judge had exhibited bias when questioning him during his

testimony at trial and thereby committed structural error. *Id.* at ¶ 20. The defendant had not objected at trial to the trial judge's questions. *Id.* at ¶ 3. In a plurality opinion, three members of this court stated that they would "decline to elevate any class of errors [including structural errors] beyond the application of our plain-error rule." *Id.* at ¶ 35. They concluded that West was unable to establish the prejudice prong of the plain-error rule based on the trial judge's questions during his cross-examination, but they recognized that "there may be situations in which a structural error so affects the fairness of a judicial proceeding that reversal is warranted despite the failure to preserve the error." *Id.*

{¶ 9} In a dissenting opinion, one member of the court agreed that West's claim was subject to a plain-error analysis but explained that he would have found prejudice sufficient to recognize plain error. *Id.* at ¶ 38-41 (Donnelly, J., dissenting). In a second dissenting opinion, two members of the court agreed that a plain-error analysis applied but said that they would have held that when structural error is recognized, it is unnecessary to consider whether the error affected the trial's outcome. *Id.* at ¶ 91 (Brunner, J., dissenting).

{¶ 10} *West* therefore established that a plain-error analysis is necessary when a defendant seeks reversal based on an error to which the defendant did not object at trial. But *West* left unresolved the extent to which the existence of structural error is relevant to that analysis. We begin where *West* left off.

Did the partial courtroom closure violate
Bond's right to a public trial?

{¶ 11} The right to a public trial is a fundamental constitutional guarantee under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, but the right is not absolute. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 49-51. A trial judge has authority to exercise control over the proceedings, but "the abridgment of a

defendant's right to a public trial may occur only when necessary, and any closure must be narrowly drawn and applied sparingly." *Id.* at ¶ 51.

{¶ 12} Courts have long applied the four-factor test set forth in *Waller v. Georgia*, 467 U.S. 39, 48, 104 S. Ct. 2210, 81 L.Ed.2d 31 (1984), to determine whether a courtroom closure violates a criminal defendant's Sixth Amendment right to a public trial. The following four factors must be satisfied for a permissible courtroom closure: (1) the party seeking to close a public hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) the trial court must make findings adequate to support the closure. When a courtroom closure is partial, rather than total, the first factor of the *Waller* test is satisfied if there is a "substantial reason" for the closure. *Drummond* at ¶ 53.

{¶ 13} Here, the court of appeals found that the closure was partial because the trial court did not exclude Bond's immediate family members or the victim's immediate family members. The court of appeals nonetheless concluded that the closure failed to satisfy the *Waller* test as modified by *Drummond* for partial closures: "Regrettably, we are constrained to reverse this case," it concluded, because "the violation of the right to a public trial is structural error that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself." 2020-Ohio-398 at ¶ 30. The court of appeals did not address the impact of Bond's failure to object to the courtroom closure in the trial court.

{¶ 14} The state argues that the court of appeals should have conducted a plain-error analysis because Bond did not object to the courtroom closure at trial. In the alternative, the state asks us to revisit the court of appeals' *Waller* analysis and conclude that no error occurred. In response, Bond argues that a plain-error analysis is not appropriate for a violation of a constitutional right resulting in a structural error and that even if the court reviews the public-trial violation for plain

7

error, the prejudice or harm to him should be presumed because the error is structural.

**{¶ 15}** We agree with the court of appeals that under the *Waller* test, a public-trial violation occurred in this case. The record does not demonstrate that the trial court conducted a *Waller* analysis. In fact, the fourth *Waller* factor requires the court to make findings adequate to support the courtroom closure. *Waller*, 467 U.S. at 48, 104 S.Ct. 2210, 81 L.Ed.2d 31. Here, the trial court mentioned only that there had been an argument in the hallway, that a vending machine had been broken, and that "for that reason," it was limiting courtroom access. This explanation falls short of what *Waller* requires.

**{¶ 16}** A public-trial violation has been recognized as a structural-error. *Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶ 50. However, in *Waller*, the United States Supreme Court held that "under the Sixth Amendment any closure of a suppression hearing [like the closure of any proceeding in a criminal trial] *over the objections of the accused* must meet" the four-factor test. (Emphasis added.) *Waller* at 46-47. Thus, neither *Waller* nor this court's precedent recognizing that a public-trial violation is structural error answer the question whether a public-trial violation is a *correctible* error when the defendant did not object to the closure at trial. To answer that question, we apply a plain-error analysis.

*Did the public-trial violation constitute*
*plain error affecting Bond's substantial rights?*

**{¶ 17}** Because four justices determined in *West* that a plain-error analysis is still necessary when the party asserting a structural error did not object to that error in the trial court, *id.*, __ Ohio St.3d __, 2022-Ohio-1556, __ N.E.3d __, at ¶ 35 (plurality opinion), ¶ 38-41 (Donnelly, J., dissenting), we must next determine to what extent, if any, the existence of a public-trial violation here informs the plain-error analysis under Crim.R. 52(B). To demonstrate plain error under Crim.R.

52(B), the party asserting error must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 52; *see* Crim.R. 52(B) "We have interpreted [the third] aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶ 18} Additionally, correcting a plain error may be done only in "exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "The [federal] Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " (Second brackets sic.) *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936). "An error may 'seriously affect the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id.* at 736-737.

{¶ 19} When a recognized structural error has occurred, that error is certainly plain. The closer question is whether the error affected substantial rights, and that question must be answered in the affirmative before the error may be corrected under Crim.R. 52(B). To resolve the question, we find *Weaver v. Massachusetts*, __ U.S. __, 137 S.Ct. 1899, 198 L.Ed.2d 420 (2017), to be informative.

{¶ 20} In *Weaver*, the courtroom had been closed to the public for two days of the jury-selection process and only potential jurors had been permitted in the courtroom. *Id.* at __, 137 S.Ct. at 1906. Defense counsel had not raised an objection to the closure, nor had the issue been raised on direct appeal. *Id.* at __, 137 S.Ct. at 1907. Instead, the defendant raised the error in a postconviction motion for new trial when he asserted that defense counsel had been ineffective for failing

to object to the courtroom closure. *Id.* at __, 137 S.Ct. at 1906. The federal district court and federal court of appeals denied the motion. The United States Supreme Court granted certiorari, stating, "There is disagreement among the Federal Courts of Appeals and some state courts of last resort about whether a defendant must demonstrate prejudice in a case like this one—in which a structural error is neither preserved nor raised on direct review but is raised later via a claim alleging ineffective assistance of counsel."[1] *Id.* at __, 137 S.Ct. at 1907.

**{¶ 21}** As noted, Weaver raised the violation of his public-trial right in a postconviction petition alleging ineffective assistance of counsel. To prove ineffective assistance of counsel, a defendant must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at __, 137 S.Ct. at 1910, citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Weaver* court held:

> [W]hen a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes, to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair.[2]

---

1. In *Weaver*, the United States Supreme Court noted that its resolution of the disagreement over whether a defendant must show prejudice when the structural-error claim was not preserved below was specifically limited to the context of trial counsel's failure to object to the closure of the courtroom *during jury selection.* __ U.S. __, 137 S.Ct. at 1907, 198 L.Ed.2d 420. But while *Weaver* may not be controlling here, its analysis nonetheless provides guidance because the question of prejudice is just as relevant as an element of the plain-error analysis applied in this case as it was in the ineffective-assistance analysis applied in *Weaver*.

2. In *Weaver*, the United States Supreme Court cautioned that its conclusion did not affect its "precedents determining that certain errors are deemed structural and require reversal because they

(Citations omitted.) *Id.* at __, 137 S.Ct. at 1911.

{¶ 22} The prejudice prong of the plain-error analysis—or, whether a plain error affected substantial rights—has been described in a similar way. *See West*, __ Ohio St.3d __, 2022-Ohio-1556, __ N.E.3d __, at ¶ 29-35 (plurality opinion). In order to show that an error affected substantial rights, the defendant must demonstrate "a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis deleted.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B)). The question here is whether that analysis is proper when presented with a structural-error claim. *See, e.g.*, *Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (noting that whether the claimed error was structural was relevant to whether the error affected substantial rights).

{¶ 23} We are unaware of any court's holding that the outcome-determinative inquiry for determining the prejudice-prong of the plain-error analysis is the *exclusive* means of finding that a plain error is one affecting "substantial rights" under Crim.R. 52(B) or its federal analog, Fed.R.Crim.P. 52(b). And the United States Supreme Court has expressly left that door open. *See Olano*, 507 U.S. at 735, 113 S.Ct. 1770, 123 L.Ed.2d 508 ("There may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome, but this issue need not be addressed. Nor need we address those errors that should be presumed prejudicial if the defendant cannot make a specific showing of

---

cause fundamental unfairness, either to the defendant in the specific case or by pervasive undermining of the systemic requirements of a fair and open judicial process." *Id.* at __, 137 S.Ct. at 1911.

prejudice. Normally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong of [Fed.R.Crim.P.] 52(b)").

{¶ 24} It has also left the door open with respect to the prejudice prong of the ineffective-assistance analysis. It noted in *Weaver* that "the *Strickland* Court cautioned that the prejudice inquiry is not meant to be applied in a 'mechanical' fashion" and "when a court is evaluating an ineffective-assistance claim, the ultimate inquiry must concentrate on 'the fundamental fairness of the proceeding.' " *Weaver*, __ U.S. __, 137 S.Ct. at 1911, 198 L.Ed.2d 420, quoting *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052, 80 L.Ed.2d 674. The *Weaver* court assumed for its analysis that a defendant *could* meet the *Strickland* standard with a showing that the trial was rendered fundamentally unfair even if he did not show that there was a reasonable probability of a different outcome without the error, but it stopped short of resolving that question. *Weaver* at __, 137 S.Ct. at 1911.

{¶ 25} Moreover, although we have held that an error can be shown to have affected substantial rights by showing that the error "affected the outcome of the trial," *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240, that particular language does not appear in the rule itself. Crim.R. 52(B) simply states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Thus, whether the outcome-determination analysis is the only way to determine whether a structural error affected a defendant's substantial rights deserves a closer look, especially in light of the unique nature of structural errors.

{¶ 26} Structural errors are constitutional defects that defy analysis by harmless-error standards because they "affect[] the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). As the United States Supreme Court recognized in *Weaver*, "[t]he precise reason why

a particular error is not amenable to [a harmless-error] analysis—and thus the precise reason why the Court has deemed it structural—varies in a significant way from error to error." *Id.* at __, 137 S.Ct. at 1908. The *Weaver* court reviewed three rationales for why certain errors, including a public-trial violation, have been deemed to be structural errors.[3] *Id.* These rationales demonstrate why the outcome-determination analysis is not the only sufficient metric by which to measure a structural error.

**{¶ 27}** "First, an error has been deemed structural in some instances if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," like a defendant's right to self-representation. *Id.*, __ U.S. __, 137 S.Ct. at 1908, 198 L.Ed.2d 420. In this situation, "harm is irrelevant to the basis underlying the right," and therefore, the error has been deemed to be structural. *Id.*

**{¶ 28}** "Second, an error has been deemed structural if the effects of the error are simply too hard to measure." *Id.* In this situation—for example, when a defendant has been denied the right to select his or her own counsel—the effect of the violation cannot be determined and it would be impossible for the government to show that the error was harmless beyond a reasonable doubt. *Id.*

**{¶ 29}** "Third, an error has been deemed structural if the error always results in fundamental unfairness." *Id.* at __, 137 S.Ct. at 1908. In this situation—for example, denying an indigent criminal defendant appointed counsel—"the resulting trial is always a fundamentally unfair one." *Id.*

**{¶ 30}** Given these descriptions, the limitations of using the outcome-determination analysis to determine whether a structural error affected substantial rights become clear. If "harm is irrelevant to the basis underlying the right," as the United States Supreme Court has recognized with regard to a defendant's right to

---

3. The *Weaver* court noted that "more than one of [the] rationales may be part of the explanation for why an error is deemed to be structural." *Id.* at __, 137 S.Ct. at 1908.

conduct his or her own defense, *Weaver*, __ U.S. __, 137 S.Ct. at 1908, 198 L.Ed.2d 420, then harm cannot be the measure of the denial of that right. Or, considering another example, because it has been recognized that denying an indigent criminal defendant an attorney results in a fundamentally unfair trial, it cannot be said that a defendant's being denied counsel does not also affect that defendant's substantial rights, even if the defendant cannot show a reasonable probability of a different trial outcome had counsel been appointed. And if the effects of the error are too hard to measure, it would be unfair to require that a defendant show that the outcome of the trial would have been different in order for an appellate court to correct the error.

{¶ 31} Additionally, the *Weaver* court noted that the public-trial right also protects the rights of the public and the press to an open courtroom. *Id.* at __, 137 S.Ct. at 1910. And Crim.R. 52(B) does not require that the substantial rights affected belong to the party asserting the error. *See* Crim.R. 52(B) Thus, it would make little sense to require a defendant to demonstrate that the outcome of the trial would have been different to satisfy the plain-error standard if the error asserted were one that affected an interest not belonging to the defendant.

{¶ 32} In sum, these examples result in our concluding that a structural error may affect substantial rights even if the defendant cannot show that the outcome of the trial would have been different had the error not occurred. To conclude otherwise would be to ignore the long-standing structural-error doctrine, the purpose of which "is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial," *Weaver* at __, 137 S.Ct. at 1907.

{¶ 33} Our conclusion is also consistent with how structural errors have been described within the context of harmless-error review, under which, as noted above, the state has the burden. " ' "Errors of this type are so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to

their effect on the outcome.' " *Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, at ¶ 20, quoting *Hill*, 92 Ohio St.3d at 196, 749 N.E.2d 274, quoting *Neder*, 527 U.S. at 7, 119 S.Ct. 1827, 144 L.Ed.2d 35. "[Structural errors] are 'so fundamental that they obviate the necessity for a reviewing court to do a harmless-error analysis.' " *Jones* at ¶ 20, quoting *Hill* at 199. It would be inconsistent to conclude that a structural error requires automatic reversal without regard to the effect on the outcome when the state has the burden to show that the error is harmless but then impose an outcome-determinative standard to find harm when a defendant has the burden. In order, then, to honor the nature of a structural error within a plain-error analysis, we must recognize that a defendant may show that a structural error to which he has failed to object at trial may have affected substantial rights for the purposes of a plain-error analysis, even if the defendant cannot show that but for the error, the outcome of the trial would have been different.[4]

{¶ 34} This decision should not be read as minimizing a defendant's obligation to object to an error during trial. Defendants should bring any potential structural errors to the trial court's attention so they may be corrected; they should not wait to raise the claim on appeal with the thought that prejudice will be presumed if a structural error is found. *See State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 23 ("We believe that our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court—where, in many cases, such errors can be easily corrected"). We do not hold that prejudice will be presumed in such cases but simply conclude that there is room in plain-error review to recognize the unique nature and fundamental import of established structural errors.

---

4. To be sure, it may be that the analysis of whether an error affects substantial rights mirrors the analysis of whether the outcome of a trial would have been different but for a structural error. But, as explained herein, we do not limit the plain-error inquiry in such a manner, given the variety of structural-error challenges that may arise and the varied nature of such challenges, even in the context of a plain-error determination.

**{¶ 35}** And even if we were to assume here that the error affected substantial rights, our inquiry would not be complete. The final consideration in the plain-error analysis is whether correcting the error is required to prevent a manifest miscarriage of justice or whether the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Olano*, 507 U.S. at 736, 113 S.Ct. 1770, 123 L.Ed.2d 508; *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.

*Does the public-trial violation in this case warrant correction?*

**{¶ 36}** "[T]he [United States Supreme] Court has not said that a public-trial violation renders a trial fundamentally unfair in every case." *Weaver*, __ U.S. __, 137 S.Ct. at 1910, 198 L.Ed.2d 420. As the *Weaver* court pointed out, "while the public-trial right is important for fundamental reasons, in some cases an *unlawful* closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint." (Emphasis added.) *Id.* If a trial was fundamentally fair *in spite of* a public-trial violation, it would be odd to conclude that the error must be corrected when no objection was made.

**{¶ 37}** Here, the courtroom closure occurred during the state's presentation of evidence, after an eyewitness finished testifying. The courtroom closure was a partial one; the trial court permitted Bond's immediate family members and the victim's immediate family members to attend the remainder of the trial. According to the state, the courtroom was closed only to the two individuals involved in the hallway disruption during the court's recess. Bond has not asserted that any specific person attempted to enter the courtroom and was denied access. Although the court's order limiting access to the courtroom was effective through the end of the trial, Bond has not asserted that any harm resulted from the closure. For example, he has not suggested that any of the trial participants failed to fulfill their duties appropriately during the remainder of trial or that the judge or prosecutor engaged in misconduct that went unnoticed because of the courtroom closure. The

record indicates that the jurors were unaware of the judge's decision to limit courtroom access. While these factors might weigh differently in the context of a *Waller* analysis or if considered after an objection to the closure made in the trial court, we review the facts here in the context of a plain-error analysis, which means that Bond has the burden to show, within the plain-error framework, that the public-trial violation so affected the fairness of the proceeding as to require correction. Because Bond has not made that showing, we conclude that the public-trial violation in his trial did not rise to the level of a plain error that must be corrected.

## Conclusion

{¶ 38} For these reasons, we reverse the judgment of the Fifth District Court of Appeals and remand the case to the court of appeals to address Bond's remaining assignments of error.

Judgment reversed
and cause remanded.

DONNELLY, STEWART, and BRUNNER, JJ., concur.

DEWINE, J., concurs in judgment only, with an opinion joined by KENNEDY and FISCHER, JJ.

––––––––––––––––––

**DEWINE, J., concurring in judgment only.**

{¶ 39} I agree that a public-trial violation occurred in this case. And I agree that the circumstances of the violation did not result in a manifest miscarriage of justice so as to warrant exercising our discretion to recognize plain error. I would leave it there.

{¶ 40} Crim.R. 52 sets out two methods of reviewing for error in a criminal trial. Crim.R. 52(A) provides, "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." This is known as harmless-error review. Under this provision, when an alleged error has been preserved in the trial court, the government has the burden on appeal of establishing that the error

17

did not affect the defendant's substantial rights. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15.

{¶ 41} The second type of review is referred to as plain-error review. That standard is found in Crim.R. 52(B): "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Under this provision, when the defendant raises an error on appeal that he failed to bring to the attention of the trial court, he has the burden to demonstrate that the error affected his substantial rights. *Perry* at ¶ 14. We have articulated a four-part standard for reviewing for plain error under this rule. First, there must be an error, or in other words, "a deviation from a legal rule." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Second, the error must be "plain" or "obvious." *Id.* Third, the error must have affected "substantial rights," which we have generally interpreted to mean that there is a reasonable probability that the error affected the outcome of the trial. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. And finally, because application of the rule is discretionary, we recognize plain error only to prevent a manifest miscarriage of justice. *Id.* at ¶ 23; *Barnes* at 27. This analysis is essentially the same as that employed by the United States Supreme Court in applying the federal plain-error rule. *See United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (interpreting Fed.R.Crim.P. 52(b)).

{¶ 42} The United States Supreme Court has recognized a limited category of errors as "structural." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Structural errors, the court has explained, "defy analysis by harmless-error standards because they affect the framework within which the trial proceeds" and "are not simply an error in the trial process itself." (Cleaned up.) *Id.* In other words, such errors are "not subject to harmless-error review," *McCoy v. Louisiana*, __ U.S. __, __, 138 S.Ct. 1500, 1511, 200 L.Ed.2d 821 (2018). Thus, "in the case of a structural error where there is an

objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to 'automatic reversal' regardless of the error's actual 'effect on the outcome.' " *Weaver v. Massachusetts*, __ U.S. __, __, 137 S.Ct. 1899, 1910, 198 L.Ed.2d 420 (2017), quoting *Neder v. United States*, 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). We have adopted the same approach. *See, e.g.*, *State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 2 (structural errors are "presumptively prejudicial and not susceptible to harmless-error review").

{¶ 43} The question presented in this case is whether a structural error requires automatic reversal of a defendant's convictions even if he failed to object to the error in the trial court. In other words, do structural errors "defy analysis" by plain-error standards as well as by harmless-error standards?

{¶ 44} On this question, the United States Supreme Court has been quite clear: they do not. As the court explained in *Johnson v. United States*, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), "the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure." To conclude otherwise, the court said, would be to create an exception to the rule "out of whole cloth," *id*. We have followed the United States Supreme Court's lead in this respect. *See Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 23 (noting that this court has cautioned against applying a different analysis for structural errors when the case "would otherwise be governed by Crim.R. 52(B) because the defendant did not raise the error in the trial court").

{¶ 45} The United States Supreme Court has explained that the classification of an error as "structural" is relevant to the third prong of the plain-error analysis—whether the error affected substantial rights. *Johnson* at 468. But at every opportunity, that court has declined to say how exactly courts should determine whether a structural error affected substantial rights for plain-error purposes. Are structural errors, like other plain errors, to be measured in terms of

whether they affected the outcome of the trial? Or are there at least some types of structural errors for which prejudice may be presumed? The United States Supreme Court has never found a structural error that defies analysis by traditional plain-error standards, but it has left the possibility open that such a category of errors might exist. *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 140, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (noting that the court has "several times declined to resolve whether 'structural' errors * * * automatically satisfy the third prong of the plain-error test"); *Olano*, 507 U.S. at 735, 113 S.Ct. 1770, 123 L.Ed.2d 508 ("There may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome, but this issue need not be addressed").

{¶ 46} Notwithstanding the reluctance of the United States Supreme Court to squarely address this question, the majority treads forth. It embarks on a lengthy and largely academic analysis of whether a defendant could, hypothetically, establish prejudice under the third prong of the plain-error standard by means other than demonstrating that the error likely affected the outcome of the case. It then opines in dicta that "a defendant may show that a structural error to which he has failed to object at trial may have affected substantial rights for the purposes of a plain-error analysis, even if the defendant cannot show that but for the error, the outcome of the trial would have been different." Majority opinion, ¶ 33. But it ultimately offers little guidance about how exactly a defendant might make such a showing, saying in almost the same breath, "[I]t may be that the analysis of whether an error affects substantial rights mirrors the analysis of whether the outcome of a trial would have been different but for a structural error," *id*. at fn. 4.

{¶ 47} There are two practical approaches to analyzing whether a structural error affected the defendant's substantial rights under plain-error review: either we measure the effect of the error on the outcome, as with other kinds of errors, or we presume that the structural error affected substantial rights, regardless of its effect on the outcome. By suggesting that prejudice may be shown by means other than

through outcome-determination, the majority implicitly adopts the position that prejudice may be presumed.

{¶ 48} None of this matters in the end, of course. As the majority correctly notes, "even if we were to assume here that the error affected substantial rights, our inquiry would not be complete." Majority opinion at ¶ 35. The majority properly concludes that regardless of whether the public-trial violation affected substantial rights, the fourth prong of the plain-error test was not satisfied. The error did not result in a manifest miscarriage of justice, and therefore, reversal is not warranted. But one has to wonder why, in deciding the case on these other grounds, the majority goes out of its way to answer a question that the United States Supreme Court has chosen to leave open (and then, doesn't really answer it anyway).

{¶ 49} I see no reason to opine on whether a structural error may satisfy the third prong of the plain-error analysis without a showing that the error was prejudicial. Rather than assert in dicta that prejudice may be recognized even if a defendant cannot establish a reasonable probability that a structural error affected the outcome of the proceedings, I'd keep our interpretation of Crim.R. 52(B) in step with the United States Supreme Court's interpretation of its federal counterpart. It is sufficient to resolve this case by reaffirming that Ohio's plain-error rule applies to unpreserved structural errors (a point that all seven justices of this court agreed on in *State v. West*, __ Ohio St.3d __, 2022-Ohio-1556, __ N.E.3d __). We need not decide whether or how the error may have affected substantial rights in this case, because, regardless, the error did not result in a manifest miscarriage of justice.

{¶ 50} In short, the majority decides a question that is not necessary to resolve this case—and one that the United States Supreme Court has consistently and intentionally left unanswered. In doing so, the majority departs from our longstanding approach of interpreting Ohio's Crim.R. 52(B) in line with the federal rule. I would leave the issue whether a structural error may be corrected on plain-

error review without a particularized showing of prejudice for a case that requires an answer to that question. I therefore concur only in the judgment.

KENNEDY and FISCHER, JJ., concur in the foregoing opinion.

_____

Gary D. Bishop, Richland County Prosecuting Attorney, and Joseph C. Snyder, Assistant Prosecuting Attorney, for appellant.

Koenig & Owen, L.L.C., and Charles A. Koenig, for appellee.

_____