[Cite as *State v. Adl*, 2022-Ohio-2692.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111170 |
| v. | : | |
| QASIM ADL, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 4, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-651717-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Kristin M. Karkutt, and Caroline Nelson, Assistant Prosecuting Attorneys, *for appellee*.

Buckeye Law Office and Craig W. Smotzer, *for appellant*.

SEAN C. GALLAGHER, A.J.:

{¶ 1}    Qasim Adl[1] appeals from the judgment of conviction entered by the trial court.  Upon review, we affirm.

---

[1] We note that appellant's brief identifies appellant's name as "Qasim Abdul Adl."

{¶ 2} On July 20, 2021, Adl was charged under a four-count indictment with aggravated murder, murder, felonious assault, and having weapons while under disability. Counts 1 through 3 included one- and three-year firearm specifications. Adl executed a jury waiver on Count 4, having weapons while under disability.

{¶ 3} The case proceeded to trial. The state called 13 witnesses to testify. The testimony reflects that during the early morning of July 5, 2020, Terrance Nelson left his apartment around 2:00 a.m. and was the victim of a homicide. Nelson's girlfriend, who was in her and the victim's nearby apartment, testified that she heard male and female voices arguing outside the apartment window and, 10 to 15 minutes later, she heard at least five to six gunshots. A neighbor testified that she was awoken by gunshots and heard a male state "please don't shoot me."

{¶ 4} Around 3:00 a.m. that morning, Ava Griffin called 911 because she was afraid that she was going to get shot. Griffin testified that she and Adl, her then boyfriend, were drinking on the 4th of July, that they had been arguing, and that she was beaten by Adl. She testified that Adl's "street mother"[2] and two males arrived outside their apartment and were trying to remove Adl from the situation. Adl and Griffin went outside, and the group was talking loudly. Griffin did not see anyone else outside. Griffin testified that when a gray vehicle pulled up in front of the apartment building, Adl's mom pointed toward the vehicle and said "that's the

---

[2] Griffin explained that Adl's "street mother" was not his biological mother but was someone he had been staying with before he was staying with Griffin.

peoples." A hearsay objection was overruled. Griffin testified that she then observed Adl running toward the gray vehicle and shooting in the air in the vicinity of the vehicle. After observing Adl start shooting and hearing five to six gunshots, Griffin ran away from the gunfire because she was scared. She then called 911. Griffin did not directly see Adl shoot the victim and did not know where Adl got the gun. Although she admitted to drinking that night and to being drunk, Griffin testified that this did not distort her memory of the events she recalled.

{¶ 5} Responding officers described Griffin as only wearing a shirt and being frightened. Griffin informed the officers that her boyfriend was running toward the vehicle and fired the gun in the air toward where the victim was located. The officers were not able to locate Adl while on scene.

{¶ 6} Nelson was shot ten times and was found lying in the street next to his gray vehicle. Bullet holes were observed in the vehicle, and multiple fired cartridge casings, as well as two bullet fragments, were collected from the scene. It was determined that all 13 9-millimeter cartridge casings recovered were fired from the same firearm. Three suspected bullet defects were located on the exterior roof of the vehicle. Other testimony and evidence were presented.

{¶ 7} The trial court denied Adl's motion for acquittal on all counts. The defense rested its case without calling any witnesses, and the trial court denied Adl's renewed motion for acquittal.

{¶ 8} The jury found Adl guilty of murder in violation of R.C. 2903.02(A), the lesser included offense under Count 1, with one- and three-year firearm

specifications; murder in violation of R.C. 2903.02(B), as charged in Count 2, with one- and three-year firearm specifications; and felonious assault in violation of R.C. 2903.11(A)(1), as charged in Count 3, with one- and three-year firearm specifications. The trial court found Adl guilty of having weapons while under disability in violation of R.C. 2923.13(A)(2), as charged in Count 4.

{¶ 9} The trial court merged Counts 2 and 3 with Count 1, and the state elected to go forward with sentencing on Count 1 with the three-year firearm specification. The trial court sentenced Adl on Counts 1 and 4 to consecutive terms, for a total sentence of life in prison with parole eligibility after 21 years. Adl timely filed this appeal.

{¶ 10} Under his first assignment of error, Adl claims his convictions are unsupported by sufficient evidence.

{¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. Circumstantial and direct evidence "possess the same probative value." *Id*. at 272. To survive a sufficiency challenge,

the state need only have had sufficient evidence, not the best possible evidence. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 166.

{¶ 12} In support of his sufficiency challenge, Adl argues that there was a lack of scientific or forensic evidence pointing to Adl; that Griffin's testimony lacked credibility for a number of reasons; and that Griffin did not see Adl actually shoot the victim. The record reflects that Griffin testified to the circumstances leading up to the shooting and she provided eyewitness testimony that Adl was shooting a gun in the direction of the victim's vehicle right after Adl's street mother said "there go her peoples right there." Griffin's testimony was consistent with the testimony of other witnesses who heard multiple shots fired and with the evidence showing suspected bullet defects were located on the exterior roof of the vehicle. Also, Griffin's testimony concerning the persons who were outside at the time of the shooting was consistent with the testimony of the victim's girlfriend, who heard both male and female voices outside shortly before the shooting. Additionally, the evidence demonstrated that the victim sustained multiple gunshot wounds and the forensic evidence linked all the cartridge casings recovered from the scene to the same weapon. Griffin called 911 and reported what occurred to the police, and the police were unable to locate Adl while on scene. Because the evidence admitted at trial, if believed, would have convinced the average mind that appellant was guilty beyond a reasonable doubt, we find the evidence was sufficient to support Adl's convictions and overrule the first assignment of error.

{¶ 13} Under the second assignment of error, Adl claims his convictions were against the manifest weight of the evidence.

{¶ 14} "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, at ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} Adl again argues that Griffin's testimony lacked credibility. More specifically he argues that she testified she drank a fifth of tequila over several hours; that she could not see at night because she had cataracts; that Adl did not have a weapon when they were fighting earlier that evening and she did not see anyone hand him a gun; that she had been physically assaulted and her eye was blackened by Adl; and that she only told responding officers that she saw Adl shoot into the air and did not see him shoot anyone. Adl's arguments are not convincing. Griffin provided a detailed account of the events surrounding the shooting, which was consistent with the testimony of other witnesses and the evidence that was introduced by the state. We conclude that the jury neither lost its way nor created a

miscarriage of justice in convicting appellant and that this is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶ 16} Under the third assignment of error, Adl claims the trial court erred by introducing inadmissible hearsay evidence. He argues that Griffin's testimony that when the gray car pulled up, Adl's street mother stated "that's the peoples" is hearsay. The trial court allowed this testimony. The trial court recognized the statement was not being offered for the truth of the matter asserted in that "[t]hey're not her people * * * [but] just a regular car driving up." The trial court also referenced "present sense impression, excited utterances, describing the scene as it is." Adl argues that the statement should have been excluded as hearsay and did not qualify under a hearsay exception.

{¶ 17} Pursuant to Evid.R. 801(C), "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The Supreme Court of Ohio has explained that "[a] statement is not hearsay when offered for a purpose other than to prove the truth of the matter asserted." *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 118, citing *State v. Davis*, 62 Ohio St.3d 326, 343, 581 N.E.2d 1362 (1991). "'It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed.'" *Id*. at ¶ 122, quoting *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). "A statement is not hearsay when introduced to show its effect on the listener." *Id*.

{¶ 18} Here, the statement was not being offered to prove who was in the car; but rather, the statement was offered to show its effect on Adl. Griffin testified that after the gray car pulled up and the statement was made, Griffin responded by running toward the vehicle and firing a gun in the air. The statement was not hearsay because it was offered to explain Adl's reaction.

{¶ 19} We need not delve into the exceptions to the hearsay rule. Even if the statement was hearsay and did not fall under an exception to the hearsay rule, any error in the admission of the statement was harmless because it did not affect the substantial rights of Adl. *See* Crim.R. 52(A). The identity of the victim was not at issue at trial. Griffin testified that Adl ran toward the gray vehicle and was shooting a gun in the vicinity of the vehicle; other witnesses testified to hearing multiple gunshots; the recovered cartridge casings were linked to the same weapon; and the police were unable to locate Adl on scene. The third assignment of error is overruled.

{¶ 20} Under the fourth assignment of error, Adl claims the trial court erred when it allowed the state to use its peremptory challenges in a racially discriminatory fashion.

{¶ 21} "*Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), prohibits a peremptory challenge from being used 'to challenge potential jurors solely on account of their race.'" *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 56. "Criminal defendants have a constitutional right

to be tried by a jury selected by nondiscriminatory criteria." *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 20, citing *Batson* at 85-86.

{¶ 22} There is no dispute that in adjudicating the defendant's *Batson* claim, the trial court applied the proper three-step inquiry. *See Johnson* at ¶ 20, citing *Batson* at 96-98. Adl made a prima facie case that the prosecutor was engaged in racial discrimination. The trial court required the prosecutor to provide a racially neutral explanation for the challenge, and the court decided, based on all the circumstances, to overrule the objection, thereby determining that the defendant did not prove purposeful discrimination. "We defer to a trial court's resolution of a *Batson* challenge absent a showing of clear error." *Johnson* at ¶ 23, citing *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 53.

{¶ 23} The record reflects that during voir dire, defense counsel challenged the state's use of its peremptory challenges to exclude three prospective jurors who are African-Americans. The judge asked the state to provide a racially neutral explanation. The assistant prosecutor indicated that the first excused juror had been convicted of complicity to murder. The second juror had a hard time hearing, repeatedly stated "you can't trust the word on the street," expressed she could not believe what other people say or judge whether they are telling the truth, and displayed a lack of understanding and confusion about what was going on in the process. The third juror indicated on the record that he would not be the type of juror that would be able to get along with others in the courtroom, expressed his concern with being in the jury room, and referenced his use of profanity, his

arguments and disagreements with others, and his being in trouble and getting fired from jobs. The record reflects that the trial judge accepted the prosecutor's reasons as race-neutral and rejected the defendant's *Batson* claim. In doing so, the trial court considered all the circumstances and assessed the challenges in context to ensure that the proffered reason for each challenge was not merely pretextual. Because no clear error has been shown, we defer to the trial court's resolution of the *Batson* claim and overrule the fourth assignment of error.

{¶ 24} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
MICHELLE J. SHEEHAN, J., CONCUR