[Cite as *State v. Johnson-Coleman*, 2026-Ohio-1044.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                    :

                          No. 115304

v.                                                :

MARSHAWN JOHNSON-COLEMAN,       :

    Defendant-Appellant.                   :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART
AND REMANDED
**RELEASED AND JOURNALIZED:** March 26, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-690848-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Jeffrey S. Schnatter and Patrick White,
Assistant Prosecuting Attorneys, *for appellee.*

Marein & Bradley, LLC, Mary Jo Tipping and John T.
Martin, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Appellant Marshawn Johnson-Coleman ("Johnson-Coleman") appeals

alleged errors during his trial and at sentencing.  For the reasons that follow, we

affirm Johnson-Coleman's convictions, vacate the trial court's sentence in part and remand the matter for resentencing in accordance with this opinion.

**Facts and Procedural History**

{¶ 2} This case concerns two separate armed robberies and the murder of Roderick Phillips ("Phillips") at Riverview Towers in Cleveland, Ohio by Johnson-Coleman. The first robbery occurred on January 11, 2024 and the victim was Phillips' girlfriend Jackqueline Walker ("Walker"). The second robbery, and the murder of Phillips, occurred on January 13, 2024.

{¶ 3} A Cuyahoga County Grand Jury returned a nine-count indictment against Johnson-Coleman on April 5, 2024. The first seven counts concerned Phillips and the January 13, 2024 incident. Count 1 was for aggravated murder, Counts 2 and 3 were for aggravated robbery, Count 4 was for murder, Count 5 was for felony murder and Counts 6 and 7 were for felonious assault. Count 8, aggravated robbery and Count 9, misdemeanor theft, concerned Walker and the January 11, 2024 incident. All counts, except Count 9, included one- and three-year firearm specifications.

{¶ 4} A bench trial commenced on April 9, 2025.

{¶ 5} On April 21, 2025, the trial court acquitted Johnson-Coleman of Counts 1 and 4 and found him guilty of all remaining counts.

{¶ 6} On June 5, 2025, the trial court sentenced Johnson-Coleman. Counts 2 and 3 for aggravated robbery merged and the State elected to proceed on Count 2. Counts 6 and 7 for felonious assault merged into Count 5, felony murder, and the

State elected to proceed on Count 5. The court sentenced Johnson-Coleman to a prison term of eight to 12 years on Count 2, 15-years-to-life imprisonment on Count 5, eight years on Count 8, aggravated robbery, and 180 days on Count 9, misdemeanor theft. The court sentenced Johnson-Coleman to nine years in prison on the mandatory firearm specifications which were ordered to be served prior to, and consecutive with, the base prison term. The court sentenced Johnson-Coleman to an aggregate prison term of 24 years to life.

{¶ 7} On appeal, Johnson-Coleman raises the following assignments of error for our review:

### Assignment of Error I:

The trial court erred when it failed to grant a mistrial based on the exclusion of the defendant's family at trial.

### Assignment of Error II:

The trial court erred when it permitted testimony from the lead detective that the defendant was apprehended in another state.

### Assignment of Error III:

The court erred in sentencing on both counts eight and nine as count nine was a lesser included offense of count eight.

**First Assignment of Error**

{¶ 8} In his first assignment of error Johnson-Coleman alleges that the trial court erred by denying his motion for a mistrial based on the fact that his family was excluded from attending trial. As stated in Johnson-Coleman's brief, in the morning of the second day of trial, Johnson-Coleman's family arrived and before they entered the courtroom they were told by a court employee that there were no proceedings

scheduled for that day and they, therefore, left. Trial proceeded as scheduled without the family present. The family returned to court that afternoon after learning trial was in progress and they were present for the remaining days of trial.

{¶ 9} Johnson-Coleman filed a motion for a mistrial based upon a violation of Johnson-Coleman's right to a public trial.

{¶ 10} After sentencing Johnson-Coleman, the trial court denied this motion as moot.

{¶ 11} "The standard of review for evaluating the trial court's decision on a motion for a mistrial is an abuse of discretion." (Internal citations omitted.) *State v. Taylor*, 2011-Ohio-839, ¶ 25 (8th Dist.). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 12} As stated in *Taylor*

> A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused or the prosecution are adversely affected, and this determination is made at the discretion of the trial court. *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490. The granting of a mistrial is only necessary when a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, citing *Illinois v. Somerville* (1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425. Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely or materially affected. *State v. Goerndt*, Cuyahoga App. No. 88892, 2007-Ohio-4067.

*Taylor* at ¶ 26.

{¶ 13} Johnson-Coleman argues that his Sixth Amendment right to a public trial was violated by his family's exclusion from trial.

{¶ 14} "The right to a public trial is a fundamental constitutional guarantee under the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution." *State v. Drummond*, 2006-Ohio-5084, ¶ 49. As discussed in *State v. Sowell*:

> Historically, the right to a public trial has been recognized as a safeguard against possible infringements against the accused. *State v. Grant,* Cuyahoga App. No. 87556, 2007-Ohio-1460, at ¶ 12. "An open courtroom is necessary to preserve and support the fair administration of justice because it encourages witnesses to come forward and be heard by the public, discourages perjury by the witnesses, and ensures that the judge and prosecutor will carry out their duties properly." *Id.*, citing *State v. Lane* (1979), 60 Ohio St.2d 112, 119, 397 N.E.2d 1338, and *Waller v. Georgia* (1984), 467 U.S. 39, 104 S.Ct. 2210, 81 L. Ed. 2d 31. Further, a public trial permits the general public to observe that the accused is "'fairly dealt with and not unjustly condemned, and that the presence of the interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.'" *Id.*, quoting *Waller* at 43. The public's right to attend criminal trials is also implicit within the guarantees of the First Amendment. *State v. Morris,* 157 Ohio App.3d 395, 398, 2004 Ohio 2870, 811 N.E.2d 577, citing *State ex rel. The Repository, Div. of Thompson Newspapers, Inc. v. Unger* (1986), 28 Ohio St.3d 418, 420, 28 Ohio B. 472, 504 N.E.2d 37.

*State v. Sowell*, 2008-Ohio-3285, ¶ 32 (10th Dist.).

{¶ 15} "The violation of the right to a public trial is structural error. It is not subjected to harmless-error analysis." *State v. Bethel*, 2006-Ohio-4853, ¶ 82. The right to a public trial "cannot be waived by the defendant's silence." *Id.* at ¶ 81, citing *State v. Hensley*, 75 Ohio St. 255, 266 (1906). However, a plain-error analysis may

apply when the party fails to object to the closure. *State v. Bond*, 2022-Ohio-4150, ¶ 16.

{¶ 16} "The right to a public trial is not absolute and can yield to other interests, such as the court exerting 'authority to exercise control over the proceedings and the discretion to impose control over the proceedings.'" *State v. Moton*, 2018-Ohio-737, ¶ 20 (8th Dist.), quoting *Drummond* at ¶ 51. "As part of its authority to exercise control over 'all proceedings in a criminal trial,' R.C. 2945.03, the court has 'discretion to order the exclusion of spectators' so long as 'it does not inappropriately deny the defendant's right to a public trial.'" *Moton* at ¶ 20, quoting *State v. Morris*, 2004-Ohio-2870, ¶ 13 (1st Dist.).

{¶ 17} To violate the defendant's Sixth Amendment right to a public trial there must be a closure of the courtroom restricting who may enter and be present during the proceedings. *See, e.g., State v. Bond*, 2022-Ohio-4150; *State v. Moton*, 2018-Ohio-737 (8th Dist.); *State v. Bellum*, 2025-Ohio-5336 (7th Dist.).

{¶ 18} Johnson-Coleman, while acknowledging this is a "unique" situation, cites no case law in his brief to support his claim that his Sixth Amendment right to a public trial was violated when there was no closure of the courtroom, although his family was allegedly mistakenly informed and, therefore, believed the court to not be in session. Our review finds no cases to support this argument.

{¶ 19} Here, we find Johnson-Coleman's Sixth Amendment right to a public trial was not violated because the courtroom was not closed and the public was not excluded from this trial. There is no evidence in the record to support the allegations

in Johnson-Coleman's brief that his family was told by a court employee that there were no trials that day, i.e., that they were "excluded" from trial. Furthermore, the trial court in this case never ordered a closure of the trial as alleged in Johnson-Coleman's brief and, in fact, the trial was never closed to the public. We cannot say that Johnson-Coleman's Sixth Amendment right to a public trial was violated when his trial was in fact open to the public and the courtroom was never actually closed.

{¶ 20} Because no substantial right of Johnson-Coleman was adversely or materially affected, we find the trial court did not abuse its discretion in denying the motion for a mistrial, nor do we find that there was any structural error.

{¶ 21} Johnson-Coleman's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 22} In his second assignment of error, Johnson-Coleman alleges that the trial court erred when it permitted testimony from the lead detective that Johnson-Coleman was apprehended in another state. Johnson-Coleman argues that the lead detective, Shane Bauhof ("Bauhof"), did not have personal knowledge of the situation when he testified that he was notified by the U.S. Marshals that they extradited Johnson-Coleman from Alabama. Johnson-Coleman argues this is a structural error in violation of Evid.R. 602 and 802, which are the rules requiring a witness to have personal knowledge of the matter he/she is testifying about and the rule against hearsay respectively. Johnson-Coleman also argues this evidence was a violation of the Confrontation Clause of the Sixth Amendment.

{¶ 23} The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). A decision regarding the admission of evidence will not be overturned absent an abuse of discretion. *State v. Payne*, 2019-Ohio-4158, ¶ 38 (8th Dist.). An abuse of discretion is defined as "a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Abdullah*, 2021-Ohio-3304, at ¶ 35.

{¶ 24} Evid.R. 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." "Personal knowledge is knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." (Cleaned up.) *State v. Allie*, 2024-Ohio-2262, ¶ 36 (8th Dist.).

{¶ 25} Evid.R. 802 states that "[h]earsay is not admissible" unless an exception applies. Pursuant to Evid.R. 801(C), "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *State v. Adl*, 2022-Ohio-2692, ¶ 17 (8th Dist.). Testimony contains hearsay if it contains out-of-court statements made by a person other than the one testifying. Testimony can only be hearsay if it contains an out-of-court statement. *State v. Stevenson*, 2023-Ohio-4853, ¶ 89 (6th Dist.), citing Evid.R. 801(C). The first step in a hearsay analysis is to determine whether the

evidence contains an out-of-court statement. *State v. Maurer*, 15 Ohio St.3d 239, 262 (1984).

{¶ 26} The testimony in question from Bauhof details how he submitted an arrest warrant to the U.S. Marshal for the arrest of Johnson-Coleman and it was brought to his attention when Johnson-Coleman was taken into custody. He testified that he was communicating with the U.S. Marshals Service, sharing information with them that he learned from Johnson-Coleman's Instagram account, which the U.S. Marshals Service used to track Johnson-Coleman. When Johnson-Coleman was arrested and taken into custody, Bauhof was informed of his arrest. Bauhof testified that he is notified when an individual is taken into custody outside the local jurisdiction pursuant to his arrest warrant and that he was aware that since Johnson-Coleman was arrested in a different state, there were additional steps required to secure custody of him. Bauhof testified that the U.S. Marshals had to have an extradition hearing to bring Johnson-Coleman back to Cuyahoga County, which took "a couple weeks."

{¶ 27} We find that Bauhof testified to his personal knowledge of things he experienced. He personally communicated with the U.S. Marshals Service sharing information about Johnson-Coleman to assist in Johnson-Coleman's out-of-state arrest. Once the arrest was made, Bauhof was aware that there would be additional steps, such as an extradition hearing, and was aware of how long it took for Johnson-Coleman to be booked into the Cuyahoga County Jail. All this information Bauhof testified to was within his personal knowledge.

{¶ 28} We then turn to the hearsay analysis. Upon review of this testimony we do not find any out-of-court statements being made in Bauhof's testimony. Without any out-of-court statements, there can be no hearsay. *State v. Stevenson*, 2023-Ohio-4853, ¶ 89 (6th Dist.), citing Evid.R. 801(C).

{¶ 29} Last we turn to Johnson-Coleman's third argument, that Bauhof's testimony violated Johnson-Coleman's Sixth Amendment right to confront the witnesses against him.

{¶ 30} As explained by the Ohio Supreme Court in *State v. Smith*, 2024-Ohio-5745, ¶ 33:

> The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, (2004), the United States Supreme Court explained that the key question for determining whether a Confrontation Clause violation has occurred is whether an out-of-court statement is 'testimonial.'" *Id.* at 59, 68. If a statement is testimonial, its admission into evidence will violate the defendant's right to confrontation if the defendant does not have an opportunity to cross-examine the declarant. *Id.* at 53-56.

If an out-of-court statement is nontestimonial, it is subject to analysis under the traditional evidentiary rules against hearsay. *See Davis v. Washington*, 547 U.S. 813, 821 (2006).

{¶ 31} We note that while Johnson-Coleman does raise a violation of his Sixth Amendment right to confront witnesses against him, he does so in two sentences in his appellate brief and provides no law or arguments to support this claim as required by App.R. 16(A)(7).

{¶ 32} Despite this, we review the merits and find no violation of the Confrontation Clause in this case. As explained above, there is no out-of-court statement made by Bauhof during his testimony; therefore there is nothing for us to analyze as testimonial or nontestimonial.

{¶ 33} We find the trial court did not abuse its discretion in permitting this evidence.

{¶ 34} Johnson-Coleman's second assignment of error is overruled.

**Third Assignment of Error**

{¶ 35} In Johnson-Coleman's third assignment of error he alleges that the trial court erred by sentencing him on both Counts 8 (aggravated robbery) and 9 (misdemeanor theft) arguing that Count 9 was a lesser included offense of Count 8 and they should have been merged for sentencing.

{¶ 36} In its brief, "[t]he state concedes Assignment of Error III."

{¶ 37} We agree with Johnson-Coleman that "theft is a lesser included offense of aggravated robbery." *State v. Cooper*, 2012-Ohio-355, ¶ 19 (8th Dist.).

{¶ 38} Johnson-Coleman's third assignment of error is sustained.

{¶ 39} Johnson-Coleman's convictions are affirmed, his sentence is vacated as to Counts 8 and 9 and the case is remanded for resentencing in accordance with this opinion.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
DEENA R. CALABRESE, J., CONCUR